IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF LOCATION INORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (313) 761-6928, THAT IS IN THE CUSTODY OR CONTROL OF T-MOBILE/SPRINT WIRELESS | Case No. 5:25-MJ-5188-MAS<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Paul E. Fetchik, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (313) 761-6928 ("the SUBJECT ACCOUNT"), with an unknown listed subscriber, whose service provider is T-Mobile/Sprint, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 070544 Sylvan Way, Parsippany, NJ 07054. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the

information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3.  I am a Deputy with the United State Marshals Service and have been since August 2010. I have received training related to this career as follows: Criminal Investigator Training Program, at the Federal Law Enforcement Training Center along with Basic Deputy United States Marshal training course in Glynco, GA. I am currently assigned as the Supervisor for the Central Kentucky Fugitive Task Force ("CKFT") in the Eastern District of Kentucky. I have substantial experience with ascertaining the location of and apprehending known fugitives using federal and state search warrants along with other legal process to obtain information (location and otherwise) of electronic devices such as cellular telephones. Based on my training and experience, I know that cellular devices are used by those who have committed or are committing crimes, to include fugitives fleeing prosecution and, thus, the subscriber information, call usage, and location of said devices, has yielded information that is relevant and material to fugitive investigations, to include identifying possible locations for physical surveillance, seizing evidence of the commission of a crime, generating leads relating to individuals who may be aiding in harboring the fugitive, and/or locating the fugitive or confederates for apprehension purposes.

4.  I am an "investigative or law enforcement officer" of the United States, that is, an officer of the United States who is empowered by the law to conduct investigations of and to make arrests for the offenses enumerated in Title 18 and Title 21 United States Code. As such, I have substantial experience with ascertaining the location of and apprehending known fugitives using federal and state search warrants along with other legal process to obtain information (location and otherwise) of electronic devices such as cellular telephones. This information can

include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. Based on my training and experience, I have also learned that the Service Provider is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone services have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data or other types of precise location information (to include by other terminology), and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II or GPS data. Based on my training and experience, I also know that some service providers can collect E-911 Phase II data about the location of the Target Telephone, including by initiating a signal to determine the location of the

Target Telephone on the service provider's network or with such other reference points as may be reasonably available. Based on my training and experience, I know that wireless providers such as the one(s) identified herein typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that Diquan Travon King has violated 21 U.S.C. §§ 841 and 846 and 18 U.S.C. § 924(c)(1)(A). King is the subject of an arrest warrant issued on December 20, 2023. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting King, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

7. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. On December 20, 2023, Diquan Travon King was indicted by a Federal Grand Jury in the Eastern District of Kentucky for violations of Conspiracy to Distribute Fluorofentanyl, Fentanyl, and Oxycodone, in violation of 21 U.S.C. §§ 841 and 846; Distribution of Fentanyl, Aiding and

Abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Distribution of Fluorofentanyl, Fentanyl, and Oxycodone, in violation of 21 U.S.C. § 841; and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A). A federal arrest warrant for King was issued that same day. He has since remained at large.

9. On January 10, 2024, apprehension authority for the case was delegated to the United States Marshals Service ("USMS"), Central Kentucky Fugitive Task Force by the Drug Enforcement Administration ("DEA"). Agents with the DEA advised Marshals with the USMS of three addresses previously identified during their investigation as associated with King. Those addresses are: 2148 Larkspur Dr. #A48 Lexington, KY; 3117 Starling Drive Lexington, KY; and 236 Chalmers Dr., Detroit, MI.

10. On April 1, 2024, the case was assigned to Supervisory Deputy U.S. Marshal Paul Fetchik for further investigation concerning the current location of King. During Fetchik's investigation, it was determined that King moved from the 2148 Larkspur Drive address approximately two years ago. Investigators also determined that King has not resided at the 3117 Starling Drive location for several months. An arrest record for King in October 2022, from Richmond, Kentucky, identified King's home address as 236 Chalmers Drive, Detroit, Michigan 48215. This same address was provided at the time King renewed his Michigan driver's license on October 9, 2023.

11. On April 19, 2024, a search warrant was authorized for information related to Google account kingdaquan23@gmail.com. A return of information based on the search warrant determined that the account is active, and has consistent usage of applications in Georgetown, Kentucky. The return also determined that the kingdaquan23@gmail.com is linked to a phone

number of (313) 761-6928 (SUBJECT ACCOUNT) with a status of enabled for the use of account recovery.

12.     I know from my training and experience, that electronic service providers such as Google provide additional means of account login, in the event a user cannot sign in, known generally as account recovery.  I know that account recovery methods often include the option(s) for a recovery phone number or alternate email address provided by the account user when establishing an account.  Google instructs its account users who provide a recovery phone number to use a mobile phone that: can receive text messages, belongs to the Google account user, is used regularly and kept in the possession of account holder.  This allows the account user to quickly unlock their account, make security feature changes, and provides a method to verify the actual account user is attempting to gain access.

13.     On April 7, 2025, a law enforcement database was searched indicating (313) 761-6928 (SUBJECT ACCOUNT) is an active wireless number by T-Mobile USA, Inc. with a subscriber listed as Emma Gene King.  The same database indicates that Emma Gene King has an address history that includes 236 Chalmers Drive, Detroit, Michigan 48215.  The investigation determined that Diquan King was arrested in 2022 while driving a vehicle previously registered to an Emma Gene King.

14.     On April 7, 2025, an additional law enforcement database indicated (313) 761-6928 (SUBJECT ACCOUNT) is an active wireless number by Omnipoint Communications Midwest Operations, DBA T-Mobile USA, Inc. associated with Emma Gene King and Diquan King. Diquan King associated with the SUBJECT ACCOUNT has a Social Security Number of

xxx-xx-7382[1] along with addresses of 236 Chalmers Dr., Detroit, MI 48215, and 2148 Larkspur Dr., #A48, Lexington, KY 40504. The investigation has determined that the Social Security Number is assigned to the fugitive Diquan Travon King and both addresses are ones previously used by fugitive King.

15.    I know from my training and experience, as well as the experience of others involved in this investigation, wanted fugitives commonly use cellular telephones to further their illegal activities and avoid apprehension by law enforcement. Many times, the phones used by those fleeing prosecution are provided by family members, other associates or have fictitious subscriber information. Fugitives commonly reach out to individuals using cellular telephones to help them find places to stay and aid them in concealing their location and hindering apprehension.

16.    Diquan Travon King is currently a fugitive and his whereabouts are unknown.

17.    Based on the foregoing, there is probable cause to believe that King is using the SUBJECT PHONE and that the requested location information will assist in locating King, who is a "person to be arrested" under Fed. R. Crim. P. 41(c)(4).

18.    In my training and experience, I have learned that T-Mobile/Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS

---

[1] King's full Social Security Number is known to investigators.

tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically, less precise that E-911 Phase II data.

19. Based on my training and experience, I know that T-Mobile/Sprint can collect E 911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile/Sprint's network or with such other reference points as may be reasonably available.

20. Based on my training and experience, I know that T-Mobile/Sprint can collect cell site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile/Sprint typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

**AUTHORIZATION REQUEST**

21. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

22. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

23. I further request that the Court direct T-Mobile/Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile/Sprint. I also request that the Court direct T-Mobile/Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile/Sprint's services, including by initiating a signal to determine the

location of the Target Cell Phone on T-Mobile/Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile/Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

24. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

25. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

/s/ Paul Fetchik
Paul Fetchik
Supervisory Deputy U.S. Marshal
United States Marshals Service

Attested to by the affiant by reliable electronic means per FRCrP 4.1 on this __23__ day of April, 2025.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE